**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kathi Ann Sharpe, | ) | No. CV-11-1436-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Select Portfolio Services, Inc. | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 6). For the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff sues Select Portfolio Services, Inc. ("Select")[1] for its breach of a class action settlement agreement, of which Plaintiff is a putative member. Plaintiff alleges that although she was a member of the certified class, Defendants proceeded to foreclose on her home in violation of the court-approved class action settlement without notifying her of her status as a class member or providing her with her rights under the settlement agreement. Plaintiff also

---

[1] At the time of the incidents that gave rise to this litigation, Select Portfolio Services, Inc. went by the name of Fairbanks Capital Corporation. After settling two lawsuits, one a class action and one brought by the Federal Trade Commission ("FTC") alleging various unfair business practices, it changed its name to Select Portfolio Services, Inc. For clarity, Defendant will be referred to as Select throughout this Order.

asserts causes of action for negligence, wrongful foreclosure, and intentional infliction of emotional distress.

In March of 2002, Plaintiff Kathi Sharpe refinanced a home loan with Fremont Investment & Loan, which is not a party to this action.[2] On July 24, 2003, Plaintiff notified Fremont and Select that she intended to rescind the loan pursuant to the Truth in Lending Act. 15 U.S.C. § 1635(f) (2006). (Doc. 9, Ex. 1). After sending the letter, "Plaintiff withheld the monthly payments to Fremont, which payments were in arrears at the time of [Select]'s acquisition of the loan."[3] (Doc. 1, Ex. 1 ¶ 20). Plaintiff went into default on the loan, and a trustee sale was noticed. Plaintiff filed suit in Maricopa County Superior Court on March 31, 2005 to rescind her loan under the Truth in Lending Act ("TILA"). 15 U.S.C. § 1635(f). The matter was subject to an arbitration hearing on May 17, 2007. On June 1, 2007, the arbitrator ruled that Plaintiff's claim was time-barred. (Doc. 6, Ex. 6).[4] The arbitration award was confirmed by the Honorable Jeanne Garcia of Maricopa County Superior Court on August 13, 2008. (Doc. 1, Ex. 9). Subsequently, Select moved for and was awarded attorney's fees in the amount of $15,000, which continue to be garnished from Plaintiff's paycheck. (Doc.

---

[2] The Court takes judicial notice of the letter, the Settlement Agreement, and Plaintiff's email communication with the FTC because they are documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)) (alteration in original).

[3] It is not clear from the pleadings, and was not decided during the arbitration in Plaintiff's state lawsuit, whether Select in fact acquired the loan prior to foreclosure, or merely serviced the loan. It is not necessary at this stage of the litigation to make such a determination. It is not disputed that Select foreclosed on the loan.

[4] The Court takes judicial notice of the arbitration records because they are "matters of public record outside the pleadings." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991).

1, Ex. 1 at 5).[5]

During the course of her litigation, Plaintiff discovered that Select had been the defendant in a class action lawsuit in the District Court of Massachusetts in 2003 and a related enforcement action brought by the Federal Trade Commission ("FTC") and the Department of Housing and Urban Development ("HUD"). (Doc. 1, Ex. 1 ¶ 14). The suits alleged that "[Select] has engaged in a pattern and practice of uniform nationwide unfair, unlawful and deceptive business practices in its Servicing of residential mortgage loans, and that [Select] has engaged in other conduct that breaches statutes, contracts, and common law." (Doc. 10, Ex. 10 at 1). The alleged misconduct "resulted in substantial overpayment of fees and charges in connection with their mortgage loans, and has exacerbated delinquencies and caused unnecessary or illegal foreclosures." (*Id.* at 2). Both suits were settled together by an agreement approved by the Massachusetts District Court. *United States v. Fairbanks Capital Corp.*, No. 03-12219-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004); *Curry v. Fairbanks Capital Corp.*, No. 03-10895-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004). The Settlement Agreement certified a class consisting of, among others, all persons whose loans were serviced by Select between January 1, 1999 and November 14, 2003 and whose loans were "in Default or treated as being in Default by [Select]" during that period. (Doc. 6, Ex. 10 § I(3)(a)(I)). The Settlement Agreement established a $40 million redress fund and substantial injunctive relief, including creating a "Default Resolution Program" and implementing specified "Operational Practices" designed to assist borrowers. (Doc. 6, Ex. 10). In its order approving the settlement, the court wrote, "the Court hereby retains exclusive jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, termination (under the Settlement Agreement or otherwise) and enforcement of the Agreement and of any orders entered in these cases." *Fairbanks*, 2004

---

[5] The arbitration documents suggest that this $15,000 may in fact have been the arbitration costs, but for purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

WL 3322609, at *5. The agreement contains a section entitled "Reserved Claims and Defenses," which excepts from the release "any claims or defenses that a Settlement Class Member asserts, affirmatively or defensively, with respect to [Select]'s Servicing in an effort to defeat any pending or future real estate foreclosure action (whether judicial or nonjudicial), including those related to the Servicing practices covered by this agreement." (Doc. 6, Ex. 10 § I(31)(a)).

Plaintiff was never notified that she was a class member, either at the time of settlement or during her later litigation with Select. She alleges that Select did not provide her with the protections of the Default Resolution Program and did not abide by the Operational Practices detailed in the settlement. She filed this suit in Maricopa County Superior Court, alleging four causes of action, including 1) Breach of Contract for not abiding by the terms of the Settlement Agreement, 2) Negligence, 3) Unlawful Foreclosure, and 4) Intentional Infliction of Emotional Distress. (Doc. 1, Ex. 1). Defendant removed this matter to federal court based upon diversity jurisdiction on July 20, 2011. (Doc. 1). Defendant moved to dismiss this action pursuant to Rule 12(b)(6) on July 27, 2011.

## DISCUSSION

**1. Legal Standard**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith*, 84 F.3d at 1217. Nevertheless, to survive dismissal, a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task" in which a court

relies upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. Instead, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, the plausibility standard is not high—a complaint may survive a motion to dismiss even "if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**2. Analysis**

It is not always easy to determine from Plaintiff's briefing what information she intends to serve as claims in this suit and what information she offers merely in support of those claims. Her original state court complaint is reasonably clear and identifies the four claims listed above. (Doc. 1, Ex. 1). Among the materials attached to the notice of removal, however, is a document titled "Motion" which has had the words "Amended Complaint" handwritten below it. It is not clear if Plaintiff intended this document to serve as an Amended Complaint or whether she intended it as some other filing and the Superior Court construed it as an Amended Complaint. The document is fifty-one single-spaced pages, and contains a great deal of information about the circumstances under which Plaintiff obtained the initial loan, her personal difficulties, and her original lawsuit. Additionally, it contains large sections of the Settlement Agreement and an argument not lodged in the complaint that the original loan documents were improperly notarized under Ariz. Rev. Stat. ("A.R.S.") §41-328 (2004). It does not include numbered causes of action. Courts are to construe the pleadings of pro se plaintiffs "liberally and to afford the plaintiff the benefit of any doubt." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, the Court will consider the original, properly formatted Complaint to be the Complaint in this case, and will only consider supplemental facts alleged in the second document as necessary. Moreover, the

Court will consider Plaintiff's Response to the Motion to Dismiss, although at 34 single-spaced pages it exceed the local page limitations. *See* LRCiv 7.2(e)(1). It will not, however, consider her "Reply to Support of Motion to Dismiss," (Doc. 9), which is in fact a sur-reply which Plaintiff filed without requesting the right to do so. "Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Under the judicially created doctrines of claim and issue preclusion, claims must be dismissed if a plaintiff brought the same claim and lost in a previous action or could have brought the claim in a previous action, unless "the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480 (1982) (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)). Plaintiff previously brought the TILA claim and lost in arbitration. (Doc. 10 Ex. 6). To the extent that she intends to raise any claims under TILA here, claim preclusion requires dismissal. "The state court's confirmation of the arbitration award constitutes a judicial proceeding . . .and thus must be given the full faith and credit it would receive under state law." *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989). In addition, claims that the original loan documents were improperly notarized are precluded, to the extent that Plaintiff intends to raise them, because they "might have been litigated" in the original case. *Pettit v. Pettit*, 218 Ariz. 529, 531, 189 P.3d 1102, 1104 (App. 2008).

Defendants argue that issue preclusion also requires dismissing claims brought pursuant to Plaintiff's status as a class member of *Curry*, because she could have raised such claims during the state court proceeding. (Doc. 6). Claim preclusion is not excused when a party simply "did not happen to think of the theory he now advances." *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 634 (9th Cir. 1990). However, Plaintiff argues not merely that she did not think of the *Curry*-class related claims, but that she could not have known about them because she was never notified of her class status. The Ninth Circuit has described the theory of "fraudulent concealment," which can operate as an exception to claim preclusion,

as when a plaintiff pleads "facts showing that [a defendant] actively misled him [and] that he had neither actual nor constructive knowledge of the facts constituting his claim for relief despite his diligence in trying to discover the pertinent facts." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249–50 (9th Cir. 1978). Courts apply the fraudulent concealment exception when defendant's actions "prevented plaintiff from knowing, at the time of the first suit, either that he had a certain claim or else the extent of his injury." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1203 n.12 (9th Cir. 1982) (collecting cases).[6]

Here, Plaintiff states that not only did Select fail to notify her that she was a class member when the lawsuit was settled, it did so while actively involved with a foreclosure whose terms violated the Settlement Agreement. (Doc. 1, Ex. 1 at 17–19). The class certified in *Curry* included all persons whose loans were serviced by Select between January 1, 1999 and November 14, 2003 and whose loans were "in Default or treated as being in Default by [Select]" during that period. (Doc. 6, Ex. 10 § I(3)(a)(I)). Defendants apparently admit for the purposes of the motion that Plaintiff is a member of the *Curry* class, since her mortgage was in default when Select began servicing it in mid-2003. Plaintiff is not the first member of the *Curry* class to allege that Select failed to notice class members. *See*, *e.g.*, *Butler v. Fairbanks Capital*, 2005 WL 5108537 (D.D.C. 2005) (plaintiff who was never notified that she was a *Curry* class member but who filed suit in federal court prior to the opt-out deadline was deemed to have opted out); *In re Santangelo*, 325 B.R. 874 (Bankr. M.D. Fla. 2005); *Martin v. Select Portfolio Serving Holding Corp.*, 2008 WL 618788 (S.D. Ohio Mar. 3, 2008). Class action defendants are required to offer class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Due process and the

---

[6] The Ninth Circuit found that neither the plaintiff in *Rutledge* nor the plaintiff in *Costantini* had pled facts sufficient to show fraudulent concealment, and has therefore neither adopted nor rejected the doctrine overtly.

Federal Rules do not amount to a guarantee that every class member will be noticed. Here, however, Defendant does not assert it made any efforts to provide Plaintiff notice and has not argued that the notice it provided was "reasonably calculated, under all the circumstances" to inform Plaintiff that she was a class member. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1990).[7] The Ninth Circuit has held that when the information supporting a subsequent claim was "buried in a footnote . . . and was issued after [plaintiffs] had already filed their opening briefs," the parties did not have a full and fair opportunity to litigate the claim. *People of State of Cal. v. F.C.C.*, 905 F.2d 1217, 1245 (9th Cir. 1990). Here, it is not apparent that Plaintiff was ever informed of her class status during the duration of her previous lawsuit, not even in a footnote and not even after her opening brief was filed.[8] Plaintiff did not have the opportunity to raise claims based upon her class status when she was never notified of that status and had no way to find out that she was a class member. Plaintiff's arbitration therefore did not provide a "full and fair opportunity" to raise the *Curry*-related claim, and does not preclude her from raising it now. *Allen v. McCurry*, 449 U.S. at 95. Plaintiff's claims can now be considered in turn.

**a. Breach of Contract**

---

[7] The district court in the Northern District of Illinois has concluded that the procedures used to notify the *Curry* class satisfied due process. *Medina v. Mfr.'s & Traders Trust Co.* 2004 WL 3119019 (N.D. Ill Dec. 14, 2004). There, however, evidence was presented that the settlement administrator had sent notice to Medina, who did not receive it because he had recently moved. Defendant has not stated that any notice was directed at Plaintiff here.

[8] In fact, Defendant appears never to have notified Plaintiff that the Settlement Agreement was modified in 2007, a fact of which Plaintiff may still be unaware. *See* FTC, Subprime Mortgage Servicer Agrees to Modified Settlement, http://www.ftc.gov/opa/2007/08/sps.shtm, *last modified* Aug. 2, 2007. The Settlement Agreement's modifications included requirements that Select refund foreclosure attorney fees for services that were not actually performed, refund optional product fees paid in certain circumstances, and continue to use a qualified, independent third party to perform annual compliance audits until 2013. *Id.*

- 8 -

The Settlement Agreement requires that Select create a "Default Resolution Program" and implement "Operational Practices" designed to assist borrowers. (Doc. 6, Ex. 10). The Default Resolution Program requires Select to provide borrowers in default with information on how to contact their Loan Resolution Department, ensures that Select provide forbearance plans for those who qualify, and prohibits Select from requiring that a borrower waive or release claims against Select as a condition of accepting a forbearance plan. (Doc. 6, Ex. 11). Plaintiff states that she was offered a forbearance plan in December of 2003, after the parties signed the Settlement Agreement but before it was approved by the court,[9] and that she would have accepted the plan except for the fact that it required her to release future claims against Select. (Doc. 7 at 29). Such a claim is sufficient to survive a motion to dismiss. Defendants, however, contest that the Settlement Agreement bars damages claims, and therefore her claim must be dismissed in any event.

The Settlement Agreement "is intended to and shall be governed as if a contract executed under the laws of the Commonwealth of Massachusetts." (Doc. 10, Ex. 10 §VIII(2)). It expressly excepts from release "claims or defenses that a Settlement Class member asserts, affirmative or defensively, with respect to [Select]'s Servicing in an effort to defeat any pending or future real estate foreclosure action." (Doc. 10, Ex. 10 §I(31)(a)). Such claims, however, are limited. The agreement states that "[n]o claim to enforce either the Default Resolution Program or the Operational Practices shall be brought other than in the Court in a proceeding to enforce this Agreement, and customers of [Select], or anyone else, may not sue for damages or other personal relief based on the terms of the Default Resolution Program or the Operational Practices." (Doc. 10, Ex. 10 §III(9)(c)). The agreement does not contemplate class members suing Select after a foreclosure has already taken place based upon violations of the terms of the Settlement Agreement; instead it is

---

[9] The Court preliminarily certified the class on December 10, 2003, and the final order approving the terms was issued on May 12, 2004.. It is not clear on which date in December Plaintiff was offered the faulty forbearance plan.

- 9 -

written with an expectation that such suits will be brought as challenges to the foreclosure itself.

The agreement, however, also contemplates class members being notified of their class status so that they may challenge a foreclosure under the Settlement Agreement during the foreclosure process. Properly stated, Plaintiff's claim is not merely that Select breached the Settlement Agreement; it is that Select failed to notify her of her class status, thereby denying her due process rights to challenge the foreclosure under the terms of the agreement at the time. Moreover, other district courts have found that the Settlement Agreement's restrictions may not bar post-foreclosure lawsuits. *See, e.g.*, *Lewis v. Select Portfolio Services, Inc.* 2006 WL 1896176, at *5 (D. Md. Jul. 10, 2006) (denying a motion to dismiss by Select in a suit filed by a *Curry* class member because the Settlement Agreement does not cover a "[m]isrepresentation claim related to a client's attempt to regain his property after the completion of foreclosure."). As such, it is not clear that the provisions of the Settlement Agreement retaining jurisdiction in the District of Massachusetts apply. The Settlement Agreement states that the District of Massachusetts "shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this Agreement and of any question, issue, proceeding or action regarding the effect the Agreement and the Settlement shall have." (Doc. 10, Ex. 6 §VIII(9)). This is a suit predicated upon the failure of Select to notify Plaintiff of her status as a class member, which is not a question "regarding the effect the Agreement and the Settlement shall have." As noted above, other district courts have allowed similar cases to proceed. *See Lewis*, 2006 WL 1896176 at *5. Moreover, Defendants have made no argument that venue or jurisdiction is proper only in the District of Massachusetts. (Doc. 6).

Other claims relating in some way to the Settlement Agreement have survived a motion to dismiss. The District Court in the Southern District of Ohio, for example, found "that though Plaintiffs were members of the *Curry* class, their claims were not barred if and to the extent they were based on post-*Curry* conduct." *Martin v. Select Portfolio Serving*

- 10 -

*Holding Corp.*, 2008 WL 618788, at *1 (S.D. Ohio Mar. 3, 2008). The *Curry* settlement was "directed to a defined period from January 1, 1999 to December 10, 2003." *Id.* Plaintiff's home was foreclosed upon in 2004. (Doc. 1, Ex. 1 ¶ 22). Another court has noted that the Settlement Agreement contains provisions applicable to non-class members, and that such a member "may wish to challenge Select's compliance with these duties" in a suit for damages. *Dowling v. Select Portfolio Servicing, Inc.*, 2007 WL 2815567, at *2 (S.D. Ohio, 2007). Here, Plaintiff challenges not merely Select's failure to abide by the terms of the Default Resolution Program, but its failure to provide her notice of her class status, an argument which Select makes no effort to dispute.

Taking all material facts as true and construing them "in the light most favorable to the nonmoving party," Plaintiff has stated a claim that Select failed to notify her of her class status and proceeded to foreclose upon her home through a process that violated the Settlement Agreement. *Smith*, 84 F.3d at 1217. Even if the chances that Plaintiff will be able to prove these facts are "remote and unlikely," she has stated a claim adequate to survive a motion to dismiss. *Scheuer*, 416 U.S. at 236. The motion will be denied with respect to the Claim One.

**b. Negligence, Wrongful Foreclosure, and Intentional Infliction of Emotional Distress**

Tort claims in Arizona are subject to a two-year statute of limitations. A.R.S. § 12-542 (2003). The statute of limitations begins to run when the cause of action accrues, which happens when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the case." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995). A cause of action based on the Settlement Agreement or Plaintiff's lack of notice of her class status accrued, at the very latest, when she learned that she was a member of the *Curry* class. Plaintiff provides a copy of an email from a contact at the FTC providing her with a link to the Settlement Agreement dated March 14, 2007. (Doc. 9, Ex. 79). Thus, whether or not she knew of the Settlement Agreement

beforehand, she must have known about it by that day. The statute of limitations for tort actions therefore expired on September 14, 2009, and the claim, filed on September 21, 2010, must be dismissed.

Even were the complaint timely, the tort claims would nevertheless be dismissed. In her negligence claim, Plaintiff alleges that the duty Defendant owed her was "a duty of reasonable care to Plaintiff to follow the terms of the Default Resolution Program and Operational Practice Changes." (Doc. 1, Ex. 1 ¶ 37). As noted above, the Settlement Agreement and its appendices overtly operated as a contract, and any breach of their terms is fully covered by a breach of contract claim. Her wrongful foreclosure claim must fail because "Arizona state courts have not yet recognized a wrongful foreclosure cause of action." *Cervantes et al. v. Countrywide et al.*, 656 F.3d 1034, 1043 (9th Cir. 2011). Intentional Infliction of Emotional Distress claims can only be predicated upon conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) (supervisor following female subordinate into the restroom, grabbing her, and forcibly kissing her qualifies as atrocious and utterly intolerable). Plaintiff's tort allegations do not state a claim upon which relief may be granted.

## CONCLUSION

Plaintiff claims that Select failed to notify her of her status as a *Curry* class member even as it was foreclosing on her home through a process that violated the terms of the *Curry* Settlement Agreement. Taking her allegations as true, she is not barred from proceeding with her breach of contract claim. Her tort claims are barred by the statute of limitations, and do not state a valid claim for relief in any event.

**IT IS THEREFORE ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 6) is **granted in part and denied in part**. Count One (Breach of Contract) survives dismissal.

2. Counts Two, Three, and Four (Negligence, Wrongful Foreclosure, and Intentional Infliction of Emotional Distress) are hereby **dismissed**.

DATED this 10th day of January, 2012.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge